**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **T.M.S.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:25-cv-381-MTT-CHW** |
| | : | |
| **COMMISSIONER OF SOCIAL SECURITY,** | : | **Social Security Appeal** |
| | : | |
| **Defendant.** | : | |
| | : | |

**REPORT AND RECOMMENDATION**

This is a review of a final decision of the Commissioner of Social Security's unfavorable decision regarding T.M.S.'s application for benefits. As discussed below, the Appeals Council should have reviewed Plaintiff's newly presented evidence, at least as to Plaintiff's orthopedic impairments. Alternatively, the ALJ's decision and resulting RFC as they relate to Plaintiff's orthopedic impairments are not supported by substantial evidence. Accordingly, it is **RECOMMENDED** that Plaintiff's motion to remand (Doc. 15) be **GRANTED** and her case be **REMANDED** to the Commissioner.

**BACKGROUND**

Plaintiff applied for Title II disability benefits on October 2, 2021, alleging disability beginning on August 13, 2021, based on the following chronic conditions: a knee injury, ACL injury, and shoulder injury. (R. 464). Plaintiff later added the following conditions as reasons for her application: diabetes, high blood pressure, high cholesterol, and "breathing problems." *See*, *e.g.*, (R. 651). Plaintiff's last date insured is September 30, 2026. (R. 34). After Plaintiff's application was denied initially and on reconsideration at the state agency levels of review (Exs. 1A-4A), Plaintiff requested further review before an administrative law judge (ALJ). The

reviewing ALJ held an in-person hearing on July 9, 2024 (R. 300-332) and then issued an unfavorable opinion on September 19, 2024. (R. 29-52). Plaintiff's request for review of that decision by the Appeals Council was denied on July 7, 2025. (R. 1-7). The case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether the decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation and citation omitted). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Id.* (citation omitted). Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Consequently, the Court's role in reviewing claims brought under the Social Security Act is quite narrow.

The Commissioner's findings of law are given less deference, however. Those, the Court will consider *de novo*. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022).

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period

of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be eligible for benefits, Plaintiff's disability must be established prior to his date last insured. *See id.*

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

**AGENCY AND MEDICAL RECORD**

This case involves a voluminous medical record beginning with Plaintiff's hospitalization in August 2021 following a moped accident and culminating in the new evidence submitted to the Appeals Council. While not every treatment record is summarized below, the entire record has been reviewed.

Plaintiff was driving a moped on August 14, 2021, when a vehicle cut her off and caused her to slide off the moped. (R. 708). She was taken to the emergency room by ambulance, with complaints involving her right knee, leg, and shoulder. (*Id.*) Upon intake, she disclosed a previous shoulder surgery and Achilles tendon repair, but otherwise had no notable medical history. (R. 708-709). Although X-rays showed no shoulder dislocation, Plaintiff did have a right tibial plateau fracture, which required surgery. (R. 725-728, 752,). She was discharged with a knee immobilizer, rolling walker, and physical therapy recommendations. *See* (R. 742-748). After experiencing pain,

popping, and swelling in her right lower leg, she returned to the ER one month after surgery for evaluation of a possible blood clot. (R. 878). She was discharged from the ER later that day. (R. 882).

Plaintiff returned to the ER on February 26, 2022, for heart palpitations after re-injuring her right leg. (R. 890). She was admitted for observation. *See* (R. 919). An MRI revealed osteoarthritis and medical and lateral meniscus tears with mild extrusion. (R. 873-874). After several other tests, Plaintiff was assessed with POTS[1], diabetes, hypertension, and tachycardia. (R. 929, 1011). Cardiac testing showed that Plaintiff was in sinus tachycardia 54.9% of the time and had an ejection fraction of 60%. (R. 1125, 1671) While in the hospital, Plaintiff fell and injured both knees. (R. 931, 1002, 1060). She was discharged on March 7, 2022. *See* (R. 1125).

Plaintiff visited Dr. Joe Robinson at Mercer Medicine for her primary care needs. (Ex. 7F, 13F, 14F, 15F, 25F, 26F, 27F). Plaintiff's treatment with Dr. Robinson concerned her diabetes, hyperlipidemia, POTS, and hypertension, as well as knee pain. (R. 1943, 1981-1982, 1977, 1974). Plaintiff continued to complain of knee pain into 2023. *See*, *e.g.*, (R. 1970, 1973, 1955). At many visits, the notes reflect that Plaintiff had a normal gait. *See, e.g.*, (R. 1958, 1965, 1971). These visits also note Plaintiff's history of ongoing knee pain, difficulty staying in any position for more than 15 minutes, and problems with navigating stairs. (R. 1955, 1960, 1970). The last visit in the record before the ALJ, on August 29, 2024, also recorded Plaintiff's gait as normal but did not discuss Plaintiff's August 7, 2024, surgical procedure (described more thoroughly below in the newly presented evidence summary), although Dr. Robinson cleared Plaintiff for the procedure on July 24, 2024. *Compare* (*Id.*) *and* (R. 3363).

[1] Postural orthostatic tachycardia syndrome.

Following discharge from the February 2022 hospital admission and referral from Dr. Robinson, Plaintiff began seeing Dr. Horne at Central Georgia Heart and Vein Center to treat her for sinus tachycardia and POTS. (Ex. 5F, 8F, 25F). In May 2022, Plaintiff reported a racing heartbeat three to four times per day. (R. 1506). In September 2023, Plaintiff reported that her heartrate ranged from 50-130 and that her dizziness increased upon standing. (R. 1673). In June 2024, at the last visit before the hearing before the ALJ, Plaintiff reported complications with her blood pressure and heart rate since having a hysterectomy, but was otherwise doing well. (R. 3278). Dr. Horne decreased Plaintiff's acebutolol with plans to monitor the effect on her blood pressure and tachycardia. (R. 3280).

*Consultative Exams*

In January 2024, Plaintiff saw Dr. Larmia Robbins-Brinson for a psychological consultative exam (Ex. 9F) and Dr. Stanford Williamson for a physical consultative exam. (Ex. 10F). At both exams, Plaintiff disclosed knee and heart problems. (R. 1734, 1739). Plaintiff disclosed no issues with activities of daily living or taking care of personal tasks to Dr. Robbins-Brinson, but she stated that health and mobility were here greatest concerns. (R. 1735). Plaintiff disclosed more specific concerns to Dr. Williamson, including tachycardia with a heartrate as high as 180 and constant knee pain. (R. 1739). Dr. Robbins-Brinson noted that Plaintiff "ambulated slowly" (R. 1735), and Dr. Williamson noted that Plaintiff wore a knee brace but could ambulate without assistance. (R. 1739). At the physical exam, Plaintiff's blood pressure was 113/110 and her pulse was 93, for which Dr. Williamson advised Plaintiff to seek medical attention. (*Id.*) Both examiners found Plaintiff to be cooperative, oriented, and a good historian. (R. 1735, 1740).

*Plaintiff's Hearing Testimony and Function Reports*

At the hearing before the ALJ, Plaintiff's counsel gave an opening statement that outlined the 2021 moped accident and ensuing complications. (R. 304-306). Plaintiff then described her work history and her attempts to return to work following the accident, which ended in February 2022. (R. 308-313). When the ALJ explored what factors might prevent Plaintiff from working, Plaintiff gave the example of how her knee "locks up" even when sitting for short periods of time. (R. 314). Plaintiff testified that she tries to move in an attempt to decrease her pain and the stiffening of her joints, while not overexerting herself in order to manage the tachycardia. (R. 315, 322-323). Plaintiff considers it a good day if she can be without pain and if her heart rate can average 101 for four to five hours. (R. 315). Plaintiff recounted all the treatments her providers had attempted to manage her symptoms, and, although a knee replacement had been discussed in the past, she did not anticipate a knee replacement at the time of the hearing. (R. 316). However, Plaintiff noted that treatment providers mentioned performing other surgeries on her shoulder and knee at the same time. (R. 319).

Plaintiff's function reports largely mimicked her testimony. (Ex. 3E, 4E, 8E). In her July 2022 report, Plaintiff described limitations in dressing and bathing. (R. 635). She limited her ability to stand to 10 minutes and her ability to walk before resting to seven minutes. (R. 639). She noted that she used a walker and cane in addition to a brace. (R. 640). When asked about chest discomfort, Plaintiff described it as if something were sitting on her chest and stated that nothing made it completely go away. (R. 642). In the 2023 report, Plaintiff reported medication side effects such as fatigue and brain fog. (R. 662). At the time of this report, she disclosed no problems with personal care tasks. (R. 663).

*Newly Presented Evidence*

In addition to the primary care records that Plaintiff submitted after the hearing but before the hearing decision (Ex. 27F), which were included in the ALJ's opinion (R. 32), Plaintiff also submitted new evidence to the Appeals Council. The new evidence consisted of a November 13, 2024, letter from Dr. Horne (R. 15-16); third-party letters written in November 2024 describing Plaintiff's condition and symptoms (R. 17-22); October 2024 primary care records (R. 23-28); records from Dr. Horne from September 2024 to April 2025 (R. 53-99); and orthopedic treatment records from May 2024 (which had already appeared in the record before the ALJ) through May 2025. (R. 100-299, 333-462). The later orthopedic treatment records confirm that Plaintiff underwent arthroscopic procedures on her right shoulder and knee on August 7, 2024. (R. 357-360). She participated in physical therapy thereafter. (R. 366-398).

**DISABILITY EVALUATION IN PLAINTIFF'S CASE**

Following the five-step sequential evaluation procedure, the reviewing ALJ made several findings in Plaintiff's case. At step one, the ALJ found that although Plaintiff had some work activity since August 13, 2021, the alleged onset date, she had not engaged in substantial gainful activity since then. (R. 34). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; residuals of right tibia plateau fracture and right anterior cruciate ligament and medial meniscus tears; right knee osteoarthritis; degenerative joint disease of the right shoulder; lupus; migraines; tachycardia; carotid artery disease; residuals status-post transient ischemic attack and status-post hysterectomy; postural orthostatic tachycardia syndrome (POTS); and obesity. (R. 35). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the impairments listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1. (R. 37-38). Therefore, the ALJ assessed Plaintiff's RFC, and found that Plaintiff could perform light work with the following exceptions:

> [Plaintiff] occasionally climb ladders, ropes, scaffolds, and/or stairs. [Plaintiff] can occasionally balance, stoop, kneel crouch, and/or crawl. She can frequently reach with the right dominant upper extremity. [Plaintiff] can have frequent exposure extreme cold, pulmonary irritants (such as odors, dusts, gases, fumes, and poorly ventilated areas), and workplace hazards (such as open machinery and unprotected heights).

(R. 38).

After determining Plaintiff's RFC, the ALJ found that Plaintiff was able to perform her past relevant work as a waitress, as actually and generally performed. (R. 44-45). The ALJ completed the full disability analysis, and after hearing from a vocational expert, reviewing the record, and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 45-46). Some of the representative positions noted were mail clerk, small products assembler, and marker. (R. 46). Accordingly, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act from August 13, 2021, through the date of the decision. (R. 46-47).

**ANALYSIS**

Plaintiff contends that two errors warrant remand in this case. (Docs. 15, 21). First, Plaintiff argues that the ALJ did not fully evaluate the impact of Plaintiff's orthopedic and cardiac conditions, such that substantial evidence does not support the decision. (*Id.*) Second, Plaintiff argues that the evidence she presented to the Appeals Council should have been considered and that the failure to do so warrants remand. As discussed below, at least a portion of the new evidence presented to the Appeals Council demonstrates a reasonable probability that the outcome of Plaintiff's case would have been different and thus warrants a remand of Plaintiff's case.

Moreover, the ALJ's failure to address Dr. Robinson's records about the impending shoulder and knee surgery prevents a finding that substantial evidence supports the decision.

1. A portion of the new evidence presented to the Appeals Council warrants remand.

As discussed above, Plaintiff presented additional evidence to the Appeals Council, which was considered and rejected as follows:

> [Plaintiff] submitted medical records from Central Georgia Heart & Vein Center, dated September 4, 2024 (7 pages); lab and imaging findings dated July 23, 2024 (6 pages); medical records from Middle Georgia Orthopaedic Surgery & Sports Medicine, dated June 28, 2024, through September 22, 2024 (201 pages); a letter from Dr. Oliver Thorne [sic], dated November 13, 2024 (2 pages); and third party correspondence from various sources, dated November 5, 2024 through November 7, 2024 (6 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
> You submitted medical records from Central Georgia Heart & Vein Center, dated November 13, 2024, through April 29, 2025 (40 pages); Houston Healthcare WR dated April 16, 2025 (3 pages); Middle Georgia Orthopaedic Surgery and Sports Medicine dated October 1, 2024 through June 17, 2025 (134 pages); and medical records from Georgia Gamer Mason Primary Care, dated October 11, 2024 (7 pages). The Administrative Law Judge decided your case through September 19, 2024. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 19, 2024.

(R. 2)

Plaintiff challenges how the Appeals Council considered the entirety of the new evidence presented. (Doc. 15, p. 17-19). While Plaintiff used imprecise language to support her argument,

she is correct the Appeals Council committed error by failing to review Plaintiff's case, at least as to the orthopedic records that pre-date the ALJ's opinion.

Plaintiffs may present new evidence throughout the application process. 20 C.F.R. § 404.900(b). When additional evidence is presented to the Appeals Council, regulations provide that the plaintiff must demonstrate that the evidence is "new, material, and relates to the period on or before the date of the hearing decision, and [show] a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970 (a)(5); *see also Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). "'When the Appeals Council refuses to consider new evidence submitted to it and denies review, the decision is…subject to judicial review because it amounts to an error of law.'" *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998) (citations omitted). In this case, the Appeals Council declined to consider certain portions of the new evidence by finding that they did not show a reasonable probability that the outcome of the ALJ's decision would be changed. (R. 2). The Appeals Council was not required to and did not provide any further explanation for its decision.

Plaintiff argues that the new evidence met the standard necessary for Appeals Council review. To the extent that Plaintiff argues that the new evidence would "likely" change the ALJ's decision, the standard, as the Appeals Council correctly cited, is whether there is a "reasonable probability" that the additional evidence would change the outcome of the decision. As to the orthopedic records predating the ALJ's opinion, this standard has been met, and the Appeals Council erred by not considering the evidence.[2]

The ALJ recognized that Plaintiff had severe impairments to her right leg and acknowledged that Plaintiff suffered meniscus tears and ligament injuries. (R. 40). In determining

[2] The Appeals Council properly refused to consider the evidence which it labeled as not relating to the period before the decision (R. 2) because it was not chronologically relevant.

the RFC, the ALJ highlighted the lack of support for Plaintiff's subjective symptoms and self-described limitations on her ability to walk, stand, climb stairs, and otherwise use her right leg throughout the decision. The ALJ discounted the findings of agency and consultative examiners concerning limitations due to Plaintiff's right leg impairments. Although even the agency examiners suggested that Plaintiff would require a reduction in her ability to stand or "a frequent limitation involving pushing/pulling with the right lower extremity," the ALJ found little support for such limitations in the record. (R. 43-44). The ALJ pointed to the lack of prescribed cane or walker use, multiple instances of a normal gait record by Dr. Robinson, and conservative treatment such as steroid injections as factors undermining the need for additional lower extremity limitations. (R. 41-44). The chronologically relevant records, however, present a different medical situation for Plaintiff than the one described in the ALJ's decision.

These records reflect the type of treatment that the regulations contemplate as having a reasonable probability of changing the ALJ's decision. The additional records show that two days after the hearing before the ALJ, Dr. Wiley, Plaintiff's orthopedist, recommended surgery on both Plaintiff's right shoulder and knee. (R. 346). Less than one month after the hearing, Plaintiff had those surgeries and began physical therapy. (R. 357-360, 399). The fact that these surgeries were recommended *and* occurred during the relevant period directly undermines the foundation of the decision. The ALJ relied heavily on conservative treatment and a lack of objective evidence in the record to discount not only Plaintiff's subjective symptoms, but also the agency and consultative examiners' opinions of Plaintiff's orthopedic limitations, when crafting the RFC. When Plaintiff's new orthopedic records plainly countered the basis of the ALJ's decision, it was error for the Appeals Council to suggest that these records failed to demonstrate a reasonable probability the decision outcome would be affected. The Appeals Council should have considered the evidence

documenting that Plaintiff had right shoulder and knee surgery during the relevant period. This error warrants remand of Plaintiff's case to the Commissioner.

2. Whether substantial evidence supports the ALJ's decision

Even if the Appeals Council's failure to consider the newly presented evidence did not support remand of Plaintiff's case, substantial evidence does not support the ALJ's decision and resulting RFC, at least as to Plaintiff's knee and shoulder, because the ALJ failed to acknowledge that the record before her demonstrated that surgery had been scheduled for Plaintiff. Plaintiff submitted additional primary care records to the ALJ after the hearing, which the ALJ accepted and allegedly considered. (R. 32; *see* Ex. 27F) ("Given the very recent date, the undersigned finds the requirements of the rule are met and admits the evidence which was considered herein."). The decision, however, fails to demonstrate that the ALJ reviewed those records sufficiently to show that substantial evidence supports the decision and RFC.

The ALJ cited Exhibit 27F to find that Plaintiff's primary care physician, Dr. Robinson, recorded normal results or observations about Plaintiff's mental health (R. 36), but this exhibit was not cited during discussion of Plaintiff's orthopedic impairments. Throughout the decision, the ALJ cited other primary care records to demonstrate that Plaintiff's symptoms were not as severe as she described. The ALJ cited Dr. Robinson's records "going into 2024" to discount Plaintiff's symptoms (R. 41), but the ALJ did not address the visits cotemporaneous to the hearing that are documented in Exhibit 27F. A review of those visits demonstrates that Plaintiff was scheduled for the surgeries described above, but the decision provides no insight as to how or if the ALJ considered the recommended surgeries.

The records from Dr. Robinson in Exhibit 27F reflect visits or treatment from March 7, 2024, through August 29, 2024. (Ex. 27F). The notes from July 24, 2024, state that Plaintiff

presented to Dr. Robinson for "surgery clearance for right knee and right shoulder on August 7, 2024 by Dr. David Wiley…." (R. 3369). In the assessment for the visit, Dr. Robinson stated that Plaintiff was "medically optimized for surgery and may proceed without further testing." (R. 3372). Later at a visit on August 26, 2025, Plaintiff walked with a cane. (R. 3368). Although the ALJ did not have the benefit of the subsequent orthopedic and surgical records presented to the Appeals Council, these pre-operation visits with Dr. Robinson were in the record and supported Plaintiff's hearing testimony that surgery had been discussed near the time of the hearing date. The Court recognizes that the ALJ is not required to discuss every record in detail, but this development should have been acknowledged and discussed by the ALJ. Otherwise, a reviewing court is unable to determine how – of if – these surgeries factored into the ALJ's decision.

The decision fails to show that the ALJ fully considered these records, which demonstrate that Plaintiff was poised for surgery mere weeks after the hearing date. The failure to consider these records undermines the reasons that the ALJ cited to discredit Plaintiff's subjective symptoms, such that substantial evidence does not support the RFC, especially in terms of Plaintiff's orthopedic limitations. For this reason, and because the Appeals Council failed to consider new records related to Plaintiff's subsequent surgery, Plaintiff's case should be remanded to the Commissioner.

Given the above findings, the Court need not consider whether the ALJ's consideration of Plaintiff's cardiac impairments is supported by substantial evidence.

## CONCLUSION

Based on the foregoing reasons, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion to remand (Doc. 15) and **REMAND** Plaintiff's case to the Commissioner under sentence four of 42 U.S.C. § 405(g). *See Shalala v. Schafer*, 509 U.S. 292 (1993); *Melkonyan v.*

*Sullivan*, 501 U.S. 89 (1991). On remand, the Court should direct the Commissioner to carry out further administrative actions, including offering Plaintiff the opportunity for a supplemental hearing and issuing a new decision.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 27th day of July, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge